# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Sciences, Inc., </br></br> Plaintiffs, </br> v. </br></br> Manna Pro Products, LLC, Nutri-Vet Wellness, LLC, and 21st Century Animal HealthCare, LLC, </br></br> Defendants. | Civil Action No. 0:16-cv-01255-JMC </br></br></br> **ORDER AND OPINION** |

Plaintiffs Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Services, Inc., (together, "Nutramax" or "Plaintiffs") filed this action against Defendants Manna Pro Products, LLC, Nutri-Vet Wellness, LLC, and 21st Century Animal HealthCare, LLC ("21st CAHL" or "21st Century") (collectively "Defendants") "alleging that Defendants' 'Petnology Essentials' product line of health supplements for pets infringed on Nutramax's trademark by employing copycat packaging and using improper comparisons to Nutramax's Cosequin product line and that these actions violated South Carolina law on unfair competition." (ECF No. 44 (referencing ECF No. 8).)

This matter is before the court on Nutramax's Petition for Attorneys' Fees for Contempt Proceeding as to 21st CAHL. (ECF No. 50.) 21st CAHL objects to the Petition "because the amount of fees Plaintiffs seek is unreasonable in view of the facts before the Court." (ECF No. 53 at 1.) For the reasons set forth below, the court **DENIES WITHOUT PREJUDICE** Nutramax's Petition for Fees.

## I. RELEVANT BACKGROUND OF THE MATTER

The court provided the following summation of facts relevant to the pending Motion for

Fees in an Order entered on December 1, 2016:

> On July 8, 2016, the parties submitted a Joint Stipulation of Settlement and Order ("Settlement Order"), along with a consent order, dismissing the case under the terms of the Settlement Order, both of which the court endorsed and entered the same day. (ECF Nos. 31, 32.)
>
> The Settlement Order contains several recitals, which, the parties agreed, "constitute a material part of [the Settlement Order.]" (ECF No. 32 ¶ 9; see id. at 1–3.) The recitals depict and describe the packaging for Nutramax's line of products; depict the packaging for Defendants' Pentology line of products, referring to the Pentology line as the "Accused Products;" and state that "disputes have arisen between the [p]arties regarding the Accused Products and, specifically, the alleged similarity between [Nutramax's] packaging and the Accused Products' packaging," referring collectively to such disputes as the "Disputes." (Id. at 1–2.) The recitals also state that "the [p]arties desire to fully and finally resolve any and all claims and disagreements between them asserted in, arising out of, or in any way regarding the Disputes on the terms . . . set forth" in the Settlement Order. (Id. at 2.)
>
> In relevant part, ¶ 1 of the terms of the agreement, titled "Settlement Terms," states
>
>> In full and complete settlement of the Disputes . . . , the [p]arties agree as follows: (a) Within seven (7) calendar days of the Effective Date, Defendants shall pay [Nutramax] thirty-five thousand dollars ($35,000). (b) As of the Effective Date, and for all times in the future, Defendants . . . shall not manufacture, distribute ship, advertise, market, promote, transfer, sell, or offer to sell the Accused Products in the packaging shown [in the recitals]. (c) As of the Effective Date, and for all times in the future, Defendants . . . shall not manufacture, distribute ship, advertise, market, promote, transfer, sell, or offer to sell any products that either (i) use [Nutramax's] packaging, or (ii) [use] the packaging of the Accused Products as depicted [in the recitals]. (d) As of the Effective Date, and for all times in the future, Defendants . . . shall not reference or use in any manner the words Nutramax, Nutramax Laboratories®, Cosequin®, Dasuquin®, or any other of [Nutramax's] products or trademarks, whether in advertising or marketing statements or for any purpose or reason, and regardless of the channel of trade or medium of advertising (including on its website or through any agent, distributor or reseller, such as Amazon.com), and whether for product comparison purposes or not. Defendants further agree not to make any indirect or implied written or oral comparison between any product and any of Plaintiffs' products by using identical or substantially similar claims made on Plaintiffs' products (for example, a currently-prohibited comparison by implication would be "compare to #1 vet recommended brand," "same formula as the #1 vet-recommended brand"). (Id. ¶ 1 (emphasis added).) The Settlement Order[']s effective

> date was July 8, 2016 (Id. at 1.)
>
> > In exchange for Defendants' agreement that they would not engage in the conduct detailed above as well as other consideration, Nutramax agreed to release and discharge Defendants from any liability "with respect to the Disputes and any action or omission arising out of or relating to the Disputes." (Id. ¶ 3.) The parties expressly agreed that the court retained jurisdiction to enforce the terms of the Settlement Order and may enforce the Settlement Order. (Id. ¶¶ 6, 11.) The parties also agreed that "in any motion practice or other proceeding initiated to enforce the terms of [the Settlement Order,] the prevailing party shall be entitled to its reasonable attorneys' fees." (Id. ¶ 12.)

(ECF No. 44 at 1–3.)

Thereafter, on August 30, 2016, Nutramax filed an Emergency Motion for Contempt of this Court's July 8, 2016 Settlement Order asserting that 21st CAHL had failed to comply with the Settlement Order by "continuing to advertise and sell its '21st century Essential Pet Joint Health' ("Essential Pet") product line of health supplements pets, which includes on its packaging the phrase 'compare to the active ingredients in Cosequin® [products].'" (ECF No. 44 at 3 (citing ECF Nos. 34-1 at 3–5 & 34-3.)  21st CAHL opposed Nutramax's Contempt Motion asserting that it was "based upon an improper reading of a single term in the . . . 'Settlement Agreement'[] and disregards express language throughout the Settlement Agreement regarding the intended scope of the agreement." (ECF No. 37 at 1.)  After holding a motion hearing on November 29, 2016 (ECF No. 43), to allow the parties to clarify their arguments, the court entered an Order on December 1, 2016, granting in part Nutramax's Contempt Motion to the extent it sought "a finding of contempt, an award of attorneys' fees, and an order of disgorgement." (ECF No. 44 at 20.)  Accordingly, the court ordered 21st CAHL to (1) "disgorge to Nutramax its net profits from all sales, on or after July 8, 2016, of products within its Essential Pet line that employ or employed packaging with comparative advertising containing the word Cosequin or that are sold or were sold through a website that employed comparative advertising containing the word Cosequin at the time of the sale" and (2) "pay to Nutramax reasonable

attorneys' fees associated with the prosecution of the instant [Contempt] [M]otion." (Id. at 21.)

Thereafter, on January 11, 2017, Nutramax filed the instant Petition for Attorneys' Fees against 21st CAHL. (ECF No. 50.) 21st CAHL filed Objections to Nutramax's Petition on January 18, 2017, to which Nutramax filed a Reply in Support on January 23, 2017. (ECF Nos. 53 & 54.)

## II. JURISDICTION

This court initially had jurisdiction over Nutramax's claims via 28 U.S.C. § 1331, as the claims arose under the Trademark and Copyright Laws of the United States. The court appropriately heard Nutramax's state law claims based on supplemental jurisdiction since they were "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). In the parties' Settlement Order, the court "retain[ed] jurisdiction with respect to the implementation and enforcement of the terms of th[e] Stipulation and the Parties to th[e] Stipulation submit[ted] to the jurisdiction of the Court for those purposes." (ECF No. 32 at 7 ¶ 11.)

## III. LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966) (citing United States v. United Mine Workers, 330 U.S. 258, 330—332 (1947)). "The appropriate remedy for civil contempt is within the court's broad discretion." In re Gen. Motors Corp., 61 F.3d 256, 259 (4th Cir. 1995) (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 193–94 (1949)). "Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." Id. (citing United States v. Trudell, 563 F.2d 889, 891 (8th Cir. 1977)).

## IV.     ANALYSIS

A.     <u>The Parties' Arguments</u>

Nutramax seeks reimbursement for attorneys' fees "incurred in connection with the Contempt Proceeding" (ECF No. 50 at 1), which it has defined as "the period of time between August 19, 2016, when Nutramax first became aware that 21st Century was in violation of the Settlement Order, and January 11, 2017, the date of filing of this Petition." (<u>Id.</u> at 1 n.1.) Nutramax asserts that it incurred fees when it had to (1) investigate whether 21st CAHL "was selling pet supplements under its 'Essential Pet' product line in packaging that was prohibited by the terms of the . . . 'Settlement Order,'" (2) respond to 21st CAHL's intentional selling of 7,000 units of product at substandard prices in violation of the Settlement Order, and (3) "prepare its Objection to the Profit Statement [of 21st CAHL], which involved not only identifying and quantifying the extent to which 21st Century had dishonestly deflated its gross revenue, but also required legal research that it was ethically bound to present to the Court regarding 21st Century's lack of entitlement to off-set variable and fixed costs." (<u>Id.</u> at 2–3.) Nutramax further asserts that its attorneys reasonably expended 112 hours on the entire Contempt Proceeding (ECF Nos. 50 at 5–6 & 50-1 at 7–23) and are entitled to a reasonable hourly rates of $275.00 (for K. Taylor), $425.00 (for M. Stanley and E. Gianetta), $475.00 (for C. Jaros), $515.00 (for M. Nickerson), $535.00 (for J. Patterson) and $775.00 (for R. Farrier). (<u>Id.</u>) As a result of the foregoing, Nutramax requests $55,506.00 "to compensate it for its actual, out-of-pocket attorneys' fees incurred in connection with the Contempt Proceeding." (<u>Id.</u> at 7.)

21st CAHL objects to Nutramax's Petition on the basis that the amount of attorneys' fees sought of $55,506.00 "far exceed the net profits at issue before the Court ($10,912)." (ECF No. 53 at 2 (citing ECF No. 46).) In this regard, based on its analysis of the lodestar figure (<u>id.</u> at 4–

9), 21st CAHL argues that the fee amount sought by Nutramax is entirely unreasonable. Accordingly, 21st CAHL requests that the court award Nutramax a reasonable amount of attorneys' fees. (Id. at 9.)

B.   The Court's Review

"In calculating an award of attorney's fees, a court must first determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Grissom v. The Mills Corp., 549 F.3d 313, 310 (4th Cir. 2008)). In determining what constitutes a reasonable number of hours and rate, the court in its discretion should consider the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243–44 (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).[1] "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." EEOC v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990). "After determining the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" Robinson, 560 F.3d at 244 (quoting Grissom, 549 F.3d at 321). "Finally, '[o]nce the court has subtracted the fees incurred for

---

[1] While the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. EEOC v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990).

unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" Id. (quoting Grissom, 549 F.3d at 321) (internal quotation marks and citation omitted).

Fee applicants bear the burden of establishing that the rates they request are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) (citations and internal quotation marks omitted). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (citing Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988)). "In circumstances where it is reasonable to retain attorneys from other communities, however, the rates in those communities may also be considered." Id. (citing Hanson, 859 F.2d at 317).

As one of its Objections to Nutramax's Petition for Attorneys' Fees, 21st CAHL asserts that "[n]o evidence was submitted to justify Plaintiffs' proposed rates as the prevailing market rates in Columbia, South Carolina." (ECF No. 53 at 6.) In response to this assertion, Nutramax offers the Affidavit of Morgan T. Nickerson,[2] a Partner in the Boston, Massachusetts office of K&L Gates LLP, who opined that based on his "interaction with other firms and attorneys around South Carolina" the rates requested were reasonable. (ECF No. 50-1 at 5 ¶ 14.) Nutrumax also suggests that it did not submit additional evidence regarding rates to minimize the

---

[2] Attorney Nickerson's Affidavit was the only affidavit submitted in support of Nutramax's Petition.

7

creation of more legal fees and expenses and "[t]o the extent the Court would like counsel to supplement this Petition with . . . further evidence on the reasonableness of its rates, Nutramax will provide those materials." (ECF No. 50 at 5 n.5.)

Upon review, the court finds that Nutramax has not carried its burden of providing satisfactory specific evidence demonstrating that either the hourly rates sought are appropriate for the Columbia community or it was more reasonable for attorneys in Boston to perform the work at issue than attorneys in the relevant community. <u>E.g.</u>, <u>Robinson v. Equifax</u>, 560 F.3d 235, 245 (4th Cir. 2009) (the parties must prove the prevailing market rate via the affidavits of other local attorneys who are familiar with the skills of the applicants and the type of work in the relevant community). As a result, the court is unable to find the hourly rates requested by Nutramax are reasonable. However, because Nutramax has stated its ability to provide appropriate evidence regarding hourly rates (<u>see</u> ECF No. 50 at 5 n.5), the court will not adopt its own reasonable hourly rate for purposes of its lodestar calculation at this time and will allow Nutramax the opportunity to demonstrate that the requested hourly rates are reasonable.

## V. CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES WITHOUT PREJUDICE** the Petition for Attorneys' Fees for Contempt Proceeding (ECF No. 50) of Plaintiffs Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Services, Inc.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

April 17, 2017
Columbia, South Carolina

8