# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Sciences, Inc., ) ) ) | Civil Action No. 0:16-cv-01255-JMC |
| Plaintiffs, ) | |
| v. ) ) | **ORDER AND OPINION** |
| Manna Pro Products, LLC, Nutri-Vet Wellness, LLC, and 21st Century Animal HealthCare, LLC, ) ) ) ) | |
| Defendants. ) ) | |

Plaintiffs Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Services, Inc., (together, "Nutramax" or "Plaintiffs") filed this action against Defendants Manna Pro Products, LLC, Nutri-Vet Wellness, LLC, and 21st Century Animal HealthCare, LLC ("21st Century") (collectively "Defendants") "alleging that Defendants' 'Petnology Essentials' product line of health supplements for pets infringed on Nutramax's trademark by employing copycat packaging and using improper comparisons to Nutramax's Cosequin product line and that these actions violated South Carolina law on unfair competition." (ECF No. 44 (referencing ECF No. 8).)

This matter is before the court on Plaintiffs' Second Renewed Petition for Attorneys' Fees seeking "$55,506 to reimburse [Nutramax for] its reasonable, out-of-pocket attorneys' fees incurred" in connection with the Contempt Proceeding[1] brought against 21st Century. (ECF No. 66 at 1.) 21st Century objects to the Petition "because Plaintiffs have, yet again, failed to sufficiently support this amount as being 'reasonable' in view of the framework for determining

---

[1] "'Contempt Proceeding' [] refer[s] to the period of time between August 19, 2016, when Nutramax first became aware that 21st Century was in violation of the Settlement Order, and January 11, 2017, the date of filing of Nutramax's original Fee Petition." (ECF No. 66 at 3 n. 3.)

reasonable attorneys' fees and when considering the facts before the Court." (ECF No. 67 at 1.) For the reasons set forth below, the court **GRANTS** Nutramax's Second Renewed Petition for Attorneys' Fees.

## I. RELEVANT BACKGROUND OF THIS MOTION

In Orders entered on April 17, 2017 (the "April Order) and August 14, 2017 (the "August Order"), the court denied without prejudice Nutramax's two prior Petitions for Attorneys' Fees (ECF Nos. 50 & 60).[2] (See ECF No. 59 at 8; ECF No. 65 at 27.) In both Orders, the court found that Nutramax had failed to submit satisfactory specific evidence demonstrating the prevailing market rate in South Carolina for litigating civil contempt or similar proceedings. (Id.) On September 29, 2017, Nutramax filed the instant Second Renewed Petition for Attorneys' Fees, its third attempt at such relief. 21st Century filed Objections to the Second Renewed Petition for Fees on October 13, 2017, to which Nutramax filed a Reply in Support of Fees on October 20, 2017. (ECF Nos. 67 & 68.)

## II. JURISDICTION

This court initially had jurisdiction over Nutramax's claims via 28 U.S.C. § 1331, as the claims arose under the Trademark and Copyright Laws of the United States. The court appropriately heard Nutramax's state law claims based on supplemental jurisdiction since they were "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). In the parties' Settlement Order, the court "retain[ed] jurisdiction with respect to the implementation and enforcement of the terms of th[e] Stipulation and the Parties to th[e] Stipulation submit[ted] to the jurisdiction of the Court for

---

[2] The court provided an accurate and thorough recitation of the complicated factual and procedural background of this matter in the April Order (ECF No. 59 at 1–4) and the August Order (ECF No. 65 at 1–6). None of the parties objected to this background information. Accordingly, the court incorporates the factual and procedural background provided in these Orders by reference, but will not repeat that information herein.

2

those purposes." (ECF No. 32 at 7 ¶ 11.)

### III. LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966) (citing United States v. United Mine Workers, 330 U.S. 258, 330—332 (1947)). "The appropriate remedy for civil contempt is within the court's broad discretion." In re Gen. Motors Corp., 61 F.3d 256, 259 (4th Cir. 1995) (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 193–94 (1949)). "Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." Id. (citing United States v. Trudell, 563 F.2d 889, 891 (8th Cir. 1977)).

### IV. ANALYSIS

A.  The Parties' Arguments

In connection with its Contempt Proceeding against 21st Century, Nutramax seeks reimbursement for attorneys' fees in the amount of $55,506.00 incurred as follows:

| Attorney Name | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| Morgan Nickerson | 55.3 | $515.00 | $28,479.50 |
| Jeffrey Patterson | 24.9 | $535.00 | $13,321.50 |
| Chris Jaros | 2.2 | $475.00 | $1,045.00 |
| M. Stanley | 11.5 | $425.00 | $4,887.50 |
| E. Gianetta | 16.3 | $425.00 | $6,927.50 |
| K. Taylor | 1.1 | $275.00 | $302.50 |
| Richard Farrier | 0.7 | $775.00 | $542.50 |
| **Total** | **112.00** | | **$55,506.00** |

(ECF No. 50 at 6.) In support of its Second Renewed Motion for Attorneys' Fees, Nutramax submitted the following: (1) the Affidavit of Thad H. Westbrook (ECF No. 66-1), a Partner at Nelson Mullins Riley & Scarborough, LLP's Columbia, South Carolina Office; the Affidavit of Morgan T. Nickerson (ECF No. 66-2 at 1–5), counsel of record in this case; and invoices from

K&L Gates LLP (id. at 7–22), Nutramax's lawyers.

In response to the court's observations in its April and August Orders, Nutramax submitted Westbrook's opinion as a South Carolina lawyer "familiar with the prevailing market rate for civil litigators practicing in South Carolina." (Id. at 2 ¶ 4.) As a basis for his opinion, Westbrook relied on his seventeen years of legal practice in South Carolina in the areas of "business litigation, complex commercial litigation, consumer finance litigation, and class action defense." (Id. ¶¶ 1 & 2.) Westbrook generally opined that "there are no lawyers who specialize in civil contempt proceedings." (Id. at 3 ¶ 6.) Westbrook further opined that the lawyers who worked on the Contempt Proceeding are entitled to the following hourly rates:

| Attorney | Hourly Rate |
| --- | --- |
| Morgan Nickerson | $475.00[3] |
| Jeffrey Patterson | $535.00 |
| Chris Jaros | $475.00 |
| M. Stanley | $425.00 |
| E. Gianetta | $425.00 |
| K. Taylor | $275.00 |
| Richard Farrier | $475.00 |

(Id. at 3 ¶ 7–4 ¶ 11.) Westbrook stated that "these hourly rates are in line with the prevailing rates in Columbia, South Carolina for litigating a contempt proceeding or similar by lawyers of reasonably comparable skill, experience, and national reputation." (Id. at 3 ¶ 8.) As a result of the foregoing, Nutramax reiterates its request for an Order directing 21st Century to pay

---

[3] Regarding Nickerson, Nutramax asserts that Nickerson, a trademark litigation specialist, is entitled to a rate of $515.00 per hour. Nutramax asserts that the work done on the Contempt Proceeding did require the expertise of an intellectual property/trademark lawyer. (ECF No. 66 at 4.) Nutramax further asserts that "it is undisputed that the contempt proceedings 'used the Lanham Act as a guide to structure civil contempt sanctions'" and, therefore, "it is appropriate for Nutramax to recover fees for trademark litigation specialization, which commands a higher rate due to the specialized nature of the work." (Id. at 5.) Westbrook recommended a rate of $475.00 per hour for Nickerson, which rate did not consider his intellectual property specialization. (ECF No. 66-1 at 4 ¶ 11.) Westbrook observed that "Nickerson is able to command a higher rate than an attorney without this specialization." (Id.) However, Westbrook did not state that the higher rate sought by Nutramax is applicable in this matter.

4

$55,506.00 to compensate its reasonable, out-of-pocket attorneys' fees incurred in connection with the Contempt Proceeding.[4]  (ECF No. 66 at 10.)

21st Century objects to Nutramax's Second Renewed Petition on the basis that $55,506.00 is an unreasonable amount of fees because it is "nearly three times the net profits at issue" of $11,130.14.  (ECF No. 67 at 2.)  Moreover, 21st Century asserts that the proposed rates for Nutramax's counsel are unreasonable for civil contempt litigation and the hours expended were excessive.  (Id. at 4 & 6.)  In this regard, based on its analysis of the lodestar figure (id. at 4–9), 21st Century argues that the fee amount sought by Nutramax should be reduced by the court.  Accordingly, 21st Century requests that the court award Nutramax reasonable attorneys' fees in "an amount far less than the $55,506 that Plaintiffs seek for a third time."  (Id. at 10.)

B.   The Court's Review

"In calculating an award of attorney's fees, a court must first determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Grissom v. The Mills Corp., 549 F.3d 313, 310 (4th Cir. 2008)).  In determining what constitutes a reasonable number of hours and rate, the court in its discretion considers the following twelve Barber factors:

---

[4] The amount requested by Nutramax is dependent on whether the court agrees with its position that trademark law principles "played an essential role in the adjudication of the contempt proceeding."  (ECF No. 66 at 4)  If the court does not agree that trademark law principles played an essential role in the adjudication of the contempt proceeding, Nutramax requests attorneys' fees in the amount of $53,126.00.

5

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243–44 (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).[5] "After determining the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" Robinson, 560 F.3d at 244 (quoting Grissom, 549 F.3d at 321). "Finally, '[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" Id. (quoting Grissom, 549 F.3d at 321) (internal quotation marks and citation omitted).

   1. *Reasonable Hourly Rate*

"The first step in setting a reasonable fee is determining the appropriate hourly rate." Alexander S. By and Through Bowers v. Boyd, 929 F. Supp. 925, 935 (D.S.C. 1995) (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). Fee applicants bear the burden of establishing that the rates they request are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Plyler, 902 F.2d at 277

---

[5] While the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. EEOC v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990).

(citations and internal quotation marks omitted). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (citing Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988)).

Upon review, the court observes that relevant to determining the reasonable hourly rate are Barber factors three, four, five, eight, nine, ten, eleven, and twelve. The parties discuss the Barber factors in their submissions and expressly dispute the weight accorded to the evidence submitted by Nutramax in support of its Petition. (See ECF No. 66 at 8–9; ECF No. 67 at 4–9.) In addition to the fact that the fees sought ($55,506.00) are almost five times the amount recovered ($11,130.14), the court is not persuaded regarding the necessity of Nickerson's expertise in intellectual property and trademark because there are invoices showing other attorneys allegedly without such expertise performing duties similar to Nickerson.[6] Therefore, after considering the parties' arguments regarding the Barber factors in conjunction with statements provided by attorney Westbrook in his Affidavit, the court is satisfied that Nutramax presented sufficient specific evidence of the prevailing market rate in South Carolina for purposes related to the instant Second Renewed Petition for Attorneys' Fees. Accordingly, the court approves as reasonable the following hourly rates for Nutramax's attorneys:

| Attorney | Hourly Rate |
| --- | --- |
| Morgan Nickerson | $475.00 |
| Jeffrey Patterson | $535.00 |
| Chris Jaros | $475.00 |
| M. Stanley | $425.00 |
| E. Gianetta | $425.00 |
| K. Taylor | $275.00 |
| Richard Farrier | $475.00 |

---

[6] The fact of the matter is that other attorneys without Nickerson's alleged expertise performed the same billable work.

## 2. Hours Reasonably Expended

"The court may not simply accept as reasonable the number of hours reported by counsel." Alexander S., 929 F. Supp. at 938 (citing Espinoza v. Hillwood Square Mut. Ass'n, 532 F. Supp. 440, 446 (E.D. Va. 1982)). "The fee applicant has the burden of proving hours spent and how those hours were allotted to specific tasks, and the Court must ensure that the time is reasonable and that the work billed by different attorneys is not duplicative." NGM Ins. Co. v. Carolina's Power Wash & Painting, LLC, C/A No. 2:08-3378-DCN, 2010 WL 3258134, at *4 (D.S.C. July 6, 2010). Duplication must be excluded from any fee award:

> Counsel for the prevailing party shall make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (citation omitted). "A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." Pollard v. City of Portland, No. CV-01-114-ST, 2001 WL 34042624, at *5 (D. Or. Aug. 7, 2001). "Instead it can only shift the reasonable attorney fee expended." Id. "A fee that is 'not excessive' may still be unreasonable." Id. As with the reasonable hourly rate, the court is instructed to use the Barber factors referenced above in determining the reasonableness of the number of hours expended by counsel. Rum Creek Coal Sales, 31 F.3d at 175 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

The parties dispute whether Nutramax's attorneys reasonably expended one hundred twelve hours on the Contempt Proceeding. The court reviewed the invoices submitted by Nutramax and concludes that they are specific enough to allow for appropriate judicial review. Upon consideration of the first and second Barber factors, the court concludes that some of the

8

hours Nutramax seeks attorneys' fees for are excessive and/or duplicative. For example, the court finds excessive and/or duplicative the amount of hours spent on drafting, editing and revising the Motion for Contempt.[7] The Motion for Contempt was a form motion of two pages and did not contain any substantive argument.[8] (See ECF No. 34.) Additionally, there is not any evidence before the court as to why it was reasonable for two attorneys to prepare for, travel and attend oral argument on the Motion for Contempt.[9] (See ECF No. 66-2 at 15–16.) Finally, the court believes that a reduction is warranted for the occasions in which the time taken to revise a document was significantly longer than it took to draft the document. (See ECF No. 66-2 at 21.) Accordingly, the court finds that the following hourly totals are reasonable for Nutramax's attorneys:

| Attorney | Hours Reasonably Expended |
| --- | --- |
| Morgan Nickerson | 51.7 |
| Jeffrey Patterson | 10.6 |
| Chris Jaros | 0.9 |
| M. Stanley | 5.1 |
| E. Gianetta | 13.3 |
| K. Taylor | 1.1 |
| Richard Farrier | 0.7 |

   *3. Lodestar Rate Calculation*

Based on the number of reasonable hours noted above and the approved reasonable rate for each attorney of record, the court determines that the lodestar figure is as follows:

---

[7] The court also notes that several attorneys attempted to bill for time spent drafting a motion to compel. (See ECF No. 66-2 at 7 & 18.) A motion to compel was not ever filed on the electronic docket. In this regard, the court is not aware of any motion to compel that was relevant to the Contempt Proceeding.

[8] If the hours designated for drafting the Motion for Contempt (see ECF No. 66-2 at 7–8) were spent on the Memorandum in Law in Support of Motion for Contempt and Enforcement of Court Order (ECF No. 34-1), counsel should have designated the hours as such.

[9] "[G]ood 'billing judgment' requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument." Nat'l Warranty Ins. Co. v. Greenfield, No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001).

| Attorney Name | Adjusted Hours | Hourly Rate | Total |
|---|---|---|---|
| Morgan Nickerson | 51.7 | $475.00 | $24,557.50 |
| Jeffrey Patterson | 10.6 | $535.00 | $5,671.00 |
| Chris Jaros | 0.9 | $475.00 | $427.50 |
| M. Stanley | 5.1 | $425.00 | $2,167.50 |
| E. Gianetta | 13.3 | $425.00 | $5,652.50 |
| K. Taylor | 1.1 | $275.00 | $302.50 |
| Richard Farrier | 0.7 | $475.00 | $332.50 |
| **Total** | **83.40** | | **$39,111.00** |

The court declines to either increase or reduce the aforementioned lodestar amount and finds that an award of attorneys' fees in the amount of $39,111.00 is appropriate.

## V.     CONCLUSION

Upon careful consideration of the entire record and for the reasons stated above, the court hereby **GRANTS** the Second Renewed Petition for Attorneys' Fees (ECF No. 66) of Plaintiffs Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Services, Inc. The court awards Plaintiffs fees in the amount of $39,111.00.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 21, 2017
Columbia, South Carolina